IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-1197-WJM-NRN

DAB DRILLING, INC.,

    Plaintiff,

v.

BRANDON DABOVICH,
JOHNNY DABOVICH and
BRANDY DABOVICH,

    Defendants.

_____

**ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS
AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**
_____

This trade secrets misappropriation and contract dispute is before the Court on Defendants Brandon Dabovich, Johnny Dabovich, and Brandy Dabovich's Joint Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(6) (the "Motion to Dismiss") (ECF No. 70.) Plaintiff Dab Drilling, Inc. ("Dab Drilling") filed a response in opposition (ECF No. 75), and Defendants replied (ECF No. 76). For the following reasons, the Motion to Dismiss is denied.

### I. BACKGROUND

On March 4, 2019, the Court granted Defendants' motions to dismiss and permitted Plaintiff to file the Amended Complaint. (ECF No. 54.) In light of that Order, the Court assumes familiarity with the history of the case and the facts underlying it.

On March 28, 2019, Plaintiff filed the Amended Complaint.[1]  (ECF No. 64.)  On April 18, 2019, Defendants filed the Motion to Dismiss.  (ECF No. 70.)  After the Motion to Dismiss was fully briefed, the parties filed the Joint Motion to Stay Proceedings Pending Completion of Settlement and Vacate and Reschedule Discovery Hearing (the "Joint Motion to Stay").  (ECF No. 91.)  On July 24, 2019, United State Magistrate Judge N. Reid Neureiter granted the Joint Motion to Stay.  (ECF No. 93.)  On February 7, 2020, the Court adopted a Report and Recommendation that the case be administratively closed.  (ECF No. 132.)

The case remained administratively closed until August 13, 2020, when Defendants filed the Joint Motion of Defendants to Reopen Case and Status Report, which stated that settlement discussions were unsuccessful, and the parties had reached an impasse.  (ECF No. 136.)  With no objection from Plaintiff (ECF No. 138), the Court reopened the case on October 1, 2020 (ECF No. 139).  Accordingly, the Motion to Dismiss is ripe.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The

---

[1] As the Court noted in the Order dismissing Plaintiff's original complaint (ECF No. 54 at 5 n.1), Plaintiff *still* enumerates eleven causes of action, and the eleventh is *still* a request for a preliminary and permanent injunction.  (ECF No. 64 ¶¶ 169–178.)  "[A]n injunction is an equitable remedy for a violation of a right, and any injunction therefore must be predicated on a viable cause of action." *Clementson v. Countrywide Fin. Corp.*, 2011 WL 2848231, at *1 (D. Colo. July 18, 2011) (internal quotation marks omitted).  The Court, again, therefore ignores the purported eleventh cause of action.
   The Court advises Plaintiff to carefully read the Court's orders and follow the directions the Court provides.  A review of the Amended Complaint shows that in filing the Amended Complaint, Plaintiff has failed to heed several of the Court's directions set forth in the dismissal Order.  Future failures to follow the Court's directives will have consequences for Plaintiff.

Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III. ANALYSIS

### A. Trade Secrets Misappropriation (Count IX)

In Count IX, Plaintiff alleges misappropriation of its trade secrets by all Defendants pursuant to the Federal Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.* ("DTSA"). (ECF No. 64 ¶¶ 142–58.)

For DTSA purposes, "misappropriation" means

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
>
>> (i) used improper means to acquire knowledge of the trade secret;

3

>> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
>
>> > (I) derived from or through a person who had used improper means to acquire the trade secret;
>>
>> > (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>>
>> > (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>
>> (iii) before a material change of the position of the person, knew or had reason to know that—
>
>> > (I) the trade secret was a trade secret; and
>>
>> > (II) knowledge of the trade secret had been acquired by accident or mistake[.]

18 U.S.C. § 1839(5).

In the Motion to Dismiss, Defendants argue that, based on the allegations in Count IX of the Amended Complaint, it is unclear whether Plaintiff is alleging that Defendants misappropriated its trade secrets by acquiring them through improper means under 18 U.S.C. § 1839(5)(A).  (ECF No. 70 at 6–10.)

In its response to the Motion to Dismiss, Plaintiff clarifies that during a call with Defendants on April 12, 2019, its counsel "stated, twice, during the call that this case was about the **use** of Plaintiff's trade secrets and not the **unlawful acquisition** fo Plaintiff's trade secrets."  (ECF No. 75 at 2 (emphasis in original).)  Later, Plaintiff states that its "claims focused on Defendants' unlawful use of Plaintiff's trade secrets and not on the unlawful acquisition."  (*Id.* at 6.)  Finally, Plaintiff states that "The term 'acquisition,' as used in the Complaint, refers to Defendants['] unauthorized seizing of Plaintiff's trade

secrets by changing the password to Plaintiff's dropbox account." (*Id.*)

Based on Plaintiff's response to the Motion to Dismiss, the Court is satisfied that Plaintiff is not alleging a claim under § 1839(5)(A), and finds Defendants' argument on this point moot.

Next, Defendants argue that Plaintiff's DTSA misappropriation claim "fails to plausibly imply that Defendants disclosed or used Dab's trade secrets without express or implied consent." (ECF No. 70 at 10.)

A plain reading of the Amended Complaint belies Defendants' argument. Plaintiff alleges:

> 72. Defendants breached their duty to keep Dab Drilling's trade secrets in confidence when Defendants: (1) acquired or exercised possession over Dab Drilling's trade secrets by changing the password to Dab Drilling's password-protected Dropbox account; (2) acquired Dab Drilling's customer list and used it to compete with Dab Drilling in violation of multiple noncompete agreements with Dab Drilling.
>
> 73. Between 2017 and 2018, Defendants lured clients away from Dab Drilling to their own ventures.
>
> 74. One such client was Sturgeon Electric Company, Inc. ("Sturgeon").
>
> 75. Sturgeon is an Illinois company and a client of Dab Drilling.
>
> 76. Defendants pursued Sturgeon **without Dab Drilling's consent** and access[ed] Sturgeon and other client information **without Dab Drilling's consent**. See, e.g., **Exhibit 1**, attached hereto.
>
> 77. Defendants engaged in the same practice with other Dab drilling clients.
>
> 78. When Dab Drilling confronted Defendants, Defendants

>       provided access, but all of Dab Drilling's confidential
>       information was missing.

(ECF No. 64 ¶¶ 72–78 (emphasis added).)

These paragraphs sufficiently allege that Defendants acquired Plaintiff's trade secrets, including its customer list, and used them to compete with Plaintiff without Plaintiff's consent.  Therefore, the Court finds Defendants' argument that Plaintiff has failed to allege disclosure or use of its trade secrets without express or implied consent unavailing.

Defendants also argue that Plaintiff fails allege that Defendant Johnny Dabovich competed with Plaintiff in any capacity.  (ECF No. 70 at 10–11.)  As such, Defendants argue that "the Amended Complaint does not plausibly imply Johnny has used Dab's trade secrets in violation of his non-compete agreements or otherwise to support a misappropriation claim against him."  (*Id.* at 11.)  In their reply brief, Defendants point out that Plaintiff does not address the fact that the Amended Complaint only alleges that Defendants Brandon and Brandy Dabovich have competed with Plaintiff and contains no allegations that Johnny Dabovich has competed with Plaintiff; accordingly, Defendants argue Plaintiff has failed to state a DTSA misappropriation claim against Johnny Dabovich.  (ECF No. 76 at 5.)

While it is true that Plaintiff failed to address the argument concerning Johnny Dabovich's involvement in the misappropriation of its trade secrets in its response to the Motion to Dismiss (*see* ECF No. 75), based on the allegations in the Amended Complaint, the Court is not prepared to dismiss Count IX against Johnny Dabovich at this time. Plaintiff alleges that

> Defendants entered into an agreement to conspire against Plaintiff with the object of benefitting Defendants by unlawfully competing with Dab Drilling, and with the object of unlawfully obtaining Dab Drilling's property and profits. This agreement is evidenced by numerous facts contained in this Complaint, including but not limited to the Dabovich Brothers' payments to themselves, the Dabovich Brothers' acts of soliciting Dab Drilling's customers and facilitating the transfer of Dab Drilling's customers to Laying Pipe, and assisting competing companies by providing equipment, including Dab Drilling's reel trailers.

(ECF No. 64 ¶ 137.) Although far from a model of pleading clarity, to the extent these allegations are specific to the "Dabovich Brothers," they allege competition and misappropriation of trade secrets by Johnny Dabovich as well.

Plaintiff also alleges Defendants "committed numerous overt acts in furtherance of this conspiracy including but not limited to: (1) the solicitation of Dab Drilling's customers; (2) the diversion of customers from Dab Drilling to Marquez'[s] and Brandon's competing businesses; and (3) the diversion of Dab Drilling's profits to the Dabovich Brothers and Marquez." (*Id.* ¶ 138.) Further, Plaintiff alleges the "Dabovich Brothers paid Jack [Marquez] an amount equal to $55,000." (*Id.* ¶ 46.)

Based on these allegations, Johnny Dabovich had access to Plaintiff's trade secrets, participated in soliciting customers using the trade secrets, and profited from the use of the trade secrets. At this time, the Court finds that, although Plaintiff failed to heed the Court's advice to "clean up ambiguities such as . . . whether allegations against 'Defendants,' without distinguishing them, are really meant to apply to all of them," (ECF No. 54 at 10 n.3), the Amended Complaint states a claim for DTSA misappropriation against Johnny Dabovich.

**B.     Breach of Contract (Count I)**

Defendants also argue that Plaintiff lacks privity to assert a claim against Brandon Dabovich for breach of the Non-Competition Agreement (the "Agreement"), because it was signed by the three purchasers of Dab Drilling and Johnny and Brandon Dabovich—not by Plaintiff itself.[2]  (ECF No. 70 at 12–13; ECF No. 70-1.)

In response, Plaintiff argues Federal Rule of Civil Procedure 12(g)(2)[3] bars Defendants from raising this argument because they failed to raise it in their previous motion to dismiss.  (ECF No. 75 at 3.)

Even assuming *arguendo* that Rule 12(g)(2) does not bar Defendants' privity argument in this successive motion to dismiss, the Court finds Defendants have presented insufficient information to convince the Court that it is appropriate to dismiss the breach of contract claim against Brandon Dabovich at this time.

## IV. CONCLUSION

For the reasons stated above, the Court ORDERS as follows:

(1)     The Defendants' Joint Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(6) (ECF No. 70) is DENIED; and

---

[2] Defendants attached the Agreement to the Motion to Dismiss, which the Court may consider at this stage of the proceeding.  (ECF No. 70-1.)  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss").

[3] Rule 12(g)(2) provides that, "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

(2)  The parties' Telephonic Status Conference with Judge Neureiter on November 4, 2020 shall proceed as scheduled.  (ECF No. 140.)

Dated this 3rd day of November, 2020.

BY THE COURT:

_____
William J. Martínez
United States District Judge